[Cite as *In re Hamilton*, 2012-Ohio-4852.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: SAMANTHA S. HAMILTON

SAMANTHA S. HAMILTON

      Applicant

Case No. V2012-70181

Commissioners:
Susan G. Sheridan, Presiding
William L. Byers IV
E. Joel Wesp

ORDER OF A THREE-COMMISSIONER PANEL

{¶1} On November 25, 2011, the applicant, Samantha Hamilton, filed a compensation application as the result of incidents occurring on September 15, and October 10, 2011. On February 10, 2012, the Attorney General issued a finding of fact and decision denying the applicant's claim determining that she was not a victim of criminally injurious conduct  as defined by R.C. 2743.51(C)(1).  With respect to the September 15, 2011 incident, applicant alleges that her neighbor, Luther Stiffler, knocked on her daughter's bedroom window.  The Attorney General found that this alleged conduct did not pose a substantial threat of personal injury or death.  Furthermore, the applicant could not prove, by a preponderance of the evidence, that the alleged death threats Luther Stiffler made to the applicant on October 10, 2011 actually occurred.

{¶2} On March 9, 2012, the applicant submitted a request for reconsideration.  The applicant contended that the incident of September 15 should not be viewed in a vacuum, but related to a long history of harassment and intimidation starting with the death of her first husband, Joshua Nunn, on April 1, 2009.  Furthermore, the threat made to the applicant by Luther Stiffler did occur and was taken seriously by the applicant since she reported it to the police.  Applicant asserted that she was a victim

of menacing and consequently should be found a victim of criminally injurious conduct. Finally, the Licking County Court of Common Pleas granted the applicant a temporary Civil Protection Order on the basis of the statements made by the applicant which is the foundation of her compensation application.

{¶3} On April 9, 2012, the Attorney General rendered a Final Decision finding no reason to modify the initial decision.  On April 24, 2012, the applicant filed a notice of appeal from the April 9, 2012 Final Decision of the Attorney General.  Hence, a hearing was held before this panel of commissioners on August 22, 2012 at 10:35 a.m.

{¶4} The applicant, Samantha Hamilton, her attorney, Mark Poole appeared at the hearing, while Assistant Attorney General Matt Hellman appeared on behalf of the state of Ohio.

{¶5} The applicant revealed that a compensation application had been filed to recover attorney fees incurred in order to obtain a restraining order against Luther Stiffler. Applicant asserted that the evidence would show she was repeatedly threatened by Mr. Stiffler, that she reported the incidents to police, and that she was successful in obtaining a restraining order.  Although the Attorney General found she was not a victim of criminally injurious conduct, applicant asserts that evidence will show in fact she was.

{¶6} The Attorney General characterized this case as one where the applicant believed that her neighbor Luther Stiffler was involved in the death of her first husband, Joshua Nunn.  However, a coroner's report from Franklin County lists the cause of death as "acute intoxication by the combined effects of Fentanyl" and the manner of death as an "accident."  The Attorney General summarized the police reports submitted in conjunction with the history of interactions between the applicant and Luther Stiffler. The Attorney General noted that all alleged incidents were reported to the Licking County Prosecutor's Office and no criminal charges were ever filed against Luther Stiffler.  Accordingly, no evidence has been presented which proves either that Mr. Stiffler was involved in the death of Mr. Nunn or that he threatened the applicant.

Therefore, the applicant has failed to prove, by a preponderance of the evidence, that she was a victim of criminally injurious conduct and the Attorney General's Final Decision should be affirmed.

{¶7} Samantha Hamilton was called to testify. She first related that she was successful in getting a restraining order against Luther Stiffler and since that time Mr. Stiffler had stayed away from her.

{¶8} The applicant stated that her problems with Mr. Stiffler began twelve weeks after her husband's death when she received the report about the Fentanyl overdose. At that time she surmised that Mr. Stiffler was involved because she knew Mr. Stiffler used the drug. She related upon confronting Mr. Stiffler that he threatened her not to get the police involved.

{¶9} The applicant was shown Applicant's Exhibit 1, an incident investigation report dated August 21, 2011. This report concerned Kelly Roule approaching her and informing her that Luther Stiffler had supplied the drugs to her former husband which ultimately killed him. According to the report, it was Mr. Roule and Mr. Stiffler who carried Mr. Nunn's body to the applicant's residence where he died. Furthermore, Mr. Roule related that Mr. Stiffler intentionally killed Mr. Nunn due to Mr. Nunn's failure to pay an overdue drug debt.

{¶10} The applicant was directed to the incident report which stated the incidents occurred on April 1, 2009 through August 21, 2011. Ms. Hamilton recounted that on numerous occasions during this time period Mr. Stiffler would brandish firearms, pointing them at her when she left her residence.

{¶11} The applicant was directed to read the following from the incident report of August 21, 2011: "Samantha also stated she had suspicions that the neighbors were involved even then. She advised she and the subject she referred to as Luke had a verbal altercation whereby he made threats advising her she would regret getting police involved. Samantha advised she is now fearful of what Luke might do to her and her

children.   She also advised she did not wish for us to go to her home should we have any questions.   She is fearful it will raise his suspicions and he will retaliate."

{¶12} Ms. Hamilton was then directed to view Applicant's Exhibit 2, an incident/investigation report dated September 15, 2011.   The applicant related that this report was filed as the result of someone knocking on her daughter's bedroom window. This conduct scared her daughter and resulted in Ms. Hamilton leaving the residence armed with a baseball bat looking for the trespasser.   While she encountered no one in her yard she did observe Mr. Stiffler hurriedly entering his house.   She believed it was Mr. Stiffler who was knocking on her daughter's bedroom window.   Ms. Hamilton testified this conduct caused her to fear for her own safety and the safety of her children.

{¶13} Finally, Ms. Hamilton was shown Applicant's Exhibit 3, an incident/investigative report dated October 10, 2011.   This report concerned the applicant passing out flyers in the neighborhood seeking information relating to the death of her former husband Joshua Nunn which allegedly occurred at 53 Meadow Dr., Reynoldsburg, Ohio, Mr. Stiffler's address.   Mr. Stiffler had contacted police with the purpose of ending the distribution of these flyers.

{¶14} Ms. Hamilton recounted that she passed out the flyers on the direction of a detective with the Sheriff's Department to gather additional information to convince the police to open an investigation regarding the death of Mr. Nunn.

{¶15} Ms. Hamilton related that Luther Stiffler confronted her while her step-son was getting off the school bus and in front of other neighbors and Kelly Roule stated: "I am going to own you bitch and you are going to end up six feet under like your husband. And I will make sure of that."   At that point she called 911 because she was in fear for her life.

{¶16} Although the October 10, 2011, incident/investigation report lists aggravated menacing as the charge, Mr. Stiffler was not charged since Stiffler and Roule denied the threat was ever made.

{¶17} Ms. Hamilton related during the time period encompassing the filing of the first to last police reports Mr. Stiffler made numerous verbal threats and displayed firearms in an intimidating manner. As the result of the last incident she filed for a civil protection order on October 12, 2011. She filed the civil protection order because she was in fear for her life and for her children's lives.

{¶18} In closing, the applicant asserted that the case at bar is analogous to the panel's holding in the case of *In re Kinkoff-Wrenn*, V2004-60083 (6-1-04). In the *Kinkoff-Wrenn* case the offender sent menacing e-mails and placed intimidating phone calls to the victim. The offender appeared at the victim's house only once, when he came in contact with the victim's husband. In that case, criminal charges were never filed against the offender. The panel found that *Kinkoff-Wrenn* was a victim of menacing by stalking and should not be penalized by the inaction of the police to successfully prosecute the offender.

{¶19} In the case at bar the contacts with the offender were more egregious in that the threats were made in person and for a longer period of time. Furthermore, the issue in this case only involves Mr. Stiffler's interaction with Ms. Hamilton and the allegation concerning the death of Mr. Nunn is not a relevant topic.

{¶20} Ms. Hamilton called the police based upon her fear of the offender. It was not her responsibility or duty to file criminal charges against Mr. Stiffler and she should not be punished for the police's inaction. Only the prosecutor can file criminal charges and Ms. Hamilton should not suffer due to the prosecutor's failure to act. Finally, the statute does not require that criminal charges be filed or that a successful criminal prosecution occur for the applicant to qualify as a victim of criminally injurious conduct.

{¶21} The applicant asserted that she was a victim of menacing by stalking. Due to the fact that she was unsuccessful in persuading the police or the prosecutor to take criminal action against Mr. Stiffler she successfully sought a civil protection order against Mr. Stiffler in the Licking County Court of Common Pleas.

**{¶22}** In conclusion, the applicant asserted she was a victim of criminally injurious conduct and based upon her testimony and actions she has proven that by a preponderance of the evidence.  Accordingly, the Attorney General's decision of April 9, 2012 should be reversed.

**{¶23}** Initially the Attorney General asked permission to respond in writing to the *Kinkoff-Wrenn* case.  The Attorney General alleged that this was the first time he was aware that this case would be relied on by the applicant.

**{¶24}** The Attorney General argued that there is a series of inconsistencies between the applicant's testimony and the information appearing in the police reports.  With respect to the August 21, 2011 report, the applicant testified that Kelly Roule told the applicant that Luther Stiffler forced Fentanyl down Joshua Nunn's throat due to an unpaid drug debt, however, such information is not contained in the police report.

**{¶25}** Ms. Hamilton in her testimony made numerous accusations that Mr. Stiffler brandished firearms, however, no mention is made of these actions in any of the police reports.

**{¶26}** With respect to the September 15, 2011 incident, Ms. Hamilton testified that she knew Mr. Stiffler was the individual who was knocking on her daughter's bedroom window because she saw him at her home wearing a grey sweatshirt, however, this is contrary to the police report, which states neither the applicant or the applicant's daughter saw Mr. Stiffler at their home.

**{¶27}** Finally, with regard to the October 10, 2011 incident wherein the offensive statement was made to the applicant by Mr. Stiffler, the applicant testified this statement was witnessed by her step-son, Mr. Roule, and neighbors.  However, that is not consistent with the police report which mentions only Mr. Roule witnessing the statement which he categorically denied hearing.

**{¶28}** Next, the Attorney General addressed the issue of the restraining order.  The Attorney General detailed the threats made by Mr. Stiffler to the applicant contained in the petition.  Based upon these serious allegations the ex parte order was granted.

However, there was not a restraining or civil protection stalking order issued in this case, signed by a judge after a full hearing.   Rather, a no contact order was agreed to among the parties.   The entry required no contact by either party, whether in person or via electronic media.   Specially, provision eight of the agreement prohibited both parties from broadcasting or disseminating any disparaging or slanderous allegations about the other.   The Attorney General asserts this provision was added to prevent the applicant's prior conduct of distributing flyers throughout the neighborhood.

{¶29} Finally, the applicant has failed to present any evidence which corroborates the applicant's allegations.   The unsubstantiated allegations of the applicant are insufficient to meet her burden of proof with respect to establishing that criminally injurious conduct occurred.

a.        In rebuttal, applicant objected to the Attorney General's request that he be allowed to file a written response to the *Kinkoff-Wrenn* case, since this case was proffered in the applicant's request for reconsideration. Whereupon, the hearing was concluded.

{¶30} R.C. 2743.51(C)(1) in pertinent part states:

a.        "(C) 'Criminally injurious conduct' means one of the following:

b.        "(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

{¶31} The applicant must prove criminally injurious conduct by a preponderance of the evidence.   *In re Rios*, 8 Ohio Misc. 2d 4 (1983).

{¶32} The applicant must produce evidence which furnishes a reasonable basis for sustaining her claim.   If the evidence furnishes a basis for only a guess, among different possibilities, as to any essential issue in the case, she fails to sustain the

burden as to such issue. *In re Staten*, V2011-60051tc (5-27-11), 2011-Ohio-4321, citing *Landon v. Lee Motors, Inc.* 161 Ohio St. 82, 118 N.E. 2d 147 (1964).

**{¶33}** The uncorroborated statement of the applicant does not constitute sufficient proof, by a preponderance of the evidence, to establish the criminally injurious conduct. *In re Minadeo*, V79-3435jud (10-31-80).

**{¶34}** Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

**{¶35}** Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

**{¶36}** The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass*, 10 Ohio St. 2d 230, 227 N.E. 2d 212, (1967), paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill*, 176 Ohio St. 61, 197 N.E. 548 (1964).

**{¶37}** The Attorney General's request to file a written response to the *Kinkoff-Wrenn* case is denied. The case was referenced in the applicant's request for reconsideration, so any surprise alleged by the Attorney General is unfounded.

**{¶38}** From review of the case file and with full and careful consideration given to the testimony of the applicant and the arguments made by the parties at the hearing, we find the applicant has failed to prove, by a preponderance of the evidence, that she was a victim of criminally injurious conduct. The applicant has the burden of proof to establish her claim and she failed to do so. The only evidence of criminally injurious conduct is her own testimony which was inconsistent with statements she gave to police

at the time of the specific incidents involved.   Furthermore, serious threats concerning the brandishing of firearms were never conveyed to police.

**{¶39}** While applicant argues that we should find the holding in *Kinkoff-Wrenn* analogous to the case at bar we disagree.   In the *Kinkoff-Wrenn* case the applicant's husband confirmed the existence of the electronic messages and physically confronted the offender at their door step.   Additionally, the offender's parole officer was contacted and a Cease & Desist Order was issued against the offender.   Finally, medical information from her psychiatrist was contained in the file.   Taking all the information in total, a panel of commissioners found that the applicant was a victim of menacing by stalking.

**{¶40}** In the case at bar such corroborating evidence is lacking.   While applicant asserts threats were made to her by Luther Stiffler in the presence of her step-son and other

**{¶41}** neighbors, none of these individuals appeared as witnesses.   Furthermore, too many inconsistencies between her testimony and the police reports prevent this panel from finding the applicant has met her burden of proof with respect to criminally injurious conduct.

**{¶42}** Therefore, the Attorney General's decision of April 9, 2012 is affirmed.

**{¶43}** IT IS THEREFORE ORDERED THAT

**{¶44}** The Applicant's Exhibits 1, 2, and 3 are admitted into evidence;

**{¶45}** The April 9, 2012 decision of the Attorney General is AFFIRMED;

**{¶46}** This claim is DENIED and judgment is rendered for the state of Ohio;

**{¶47}** Costs are assumed by the court of claims victims of crime fund.

_____
SUSAN G. SHERIDAN
Presiding Commissioner

_____

WILLIAM L. BYERS IV
Commissioner

_____

E. JOEL WESP
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\June - Sept 2012\V2012-70181 Hamilton.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Licking County Prosecuting Attorney and to:

Filed 9-26-12
Jr. Vol. 2284, Pgs. 7-16
Sent to S.C. reporter 10-18-12